

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

NO. 2-09-020-CV

RONALD L. BRENNAN                                    APPELLANT

V.

KIM CEDENO                                           APPELLEE

------------

FROM THE 231ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. INTRODUCTION

In four issues, Appellant Ronald L. Brennan contends the trial court erred by not enforcing a final decree of divorce requiring Appellee Kim Cedeno to reimburse Brennan for one-half of their children's health care expenses—specifically, orthodontia. We are asked to determine whether the trial court abused its discretion by ruling that the orthodontia in this case was an "invasive procedure" which, per the

---

[1] *See* Tex. R. App. P. 47.4.

terms of the divorce decree, required the consent of both parties prior to treatment to trigger Cedeno's obligation to pay. We reverse and remand.

## II. BACKGROUND

On March 20, 2002, Brennan and Cedeno divorced and were appointed joint managing conservators of their two children, K.B. and R.B.[2] The divorce decree granted each parent "the joint right with the other parent to consent to medical, dental, and surgical treatment involving invasive procedures" and, during respective periods of possession, the "right to consent for the children to medical and dental care not involving invasive procedures." The decree also required both parents to pay "fifty percent of all reasonable and necessary expenses . . . including, without limitation, . . . dental, . . . and orthodontic charges, for as long as child support is payable under terms of this decree."

### A. Both Children Receive Braces

In February 2007, both children received braces on their teeth. On September 15, 2008, Brennan filed a First Amended Motion For Enforcement of Child Support Order alleging that Cedeno had "failed and refused to pay fifty percent of the children's health care bills that were provided to her by certified mail" each month for sixteen consecutive months beginning February 2007. For each of these sixteen alleged violations, Brennan asked the court to hold Cedeno in contempt until she complied with the divorce decree's terms by paying $3,388.08 in child support arrearages.

---

[2] Both children live with Cedeno.

## B. Evidence Regarding Whether Braces Are Invasive

At the hearing, Brennan modified the amount of arrearages to $3,122.80—Cedeno's half of the orthodontic expenses.[3] During the hearing, Brennan testified that (1) he discussed the necessity of the two children having braces with Cedeno before the braces were applied,[4] (2) Cedeno initially stated she did not want the children to have braces, and (3) she refused to pay her half of the costs for the braces because the procedure was not recommended by a second orthodontist to whom Cedeno took the children for another opinion. Brennan also testified that about a year before getting braces, K.B. had a tooth removed. Brennan submitted into evidence the summaries of medical expenses he calculated Cedeno owed and the bills and explanations of benefits he mailed to Cedeno each month.[5]

Cedeno testified that K.B. was already in braces before she obtained a second opinion. She took R.B. to an orthodontist who recommended an alternate procedure to prevent R.B. from being in braces for another "year or two or three." She acknowledged, however, that both children probably would have eventually needed braces, just not at that time, but she did not think the braces should be removed.

---

[3] Brennan submitted evidence that Cedeno paid half of all medical expenses he incurred on behalf of the children except the costs relating to the application of braces to the children's teeth.

[4] On cross-examination, Brennan admitted he had no documentation of his discussions with Cedeno about the braces before they were applied to either child.

[5] Brennan submitted no explanations of benefits concerning the braces into evidence.

Cedeno also contended that she had a joint right to consent prior to treatment because the application of braces is an invasive procedure.

After receiving requested letter briefs from each party regarding whether the application of braces constitutes an "invasive procedure," the trial court denied Brennan's motion. The trial court included the following in its findings of fact and conclusions of law:

> 3. At the time of the hearing, the parties stipulated through their attorneys that the consent of both parents was necessary for medical, dental and surgical treatment involving "invasive procedures."
>
> 5. The testimony was uncontroverted that the procedure in this particular case involved not only actual entry into the oral cavity of the child but the removal of at least one tooth and the orthodontic manipulation and realignment of the remaining teeth.
>
> 6. The [c]ourt finds that the orthodontia involved in this case was an invasive procedure."

## III. DISCUSSION

Brennan presents four issues to this court. First, he contends the trial court erred in ruling that the orthodontia in this case was an "invasive procedure" as that term is used in the divorce decree because there was no evidence presented at trial to support the court's ruling. Second, he contends the ruling was against the great weight and preponderance of the evidence. Third, Brennan contends the trial court thus abused its discretion. And, fourth, he contends that the trial court erred by not awarding him judgment. Because they are dispositive, we first address Brennan's third and fourth issues.

4

## A. Standard of Review

We review the trial court's ruling on a motion for enforcement of a divorce decree under an abuse of discretion standard. *Murray v. Murray*, 276 S.W.3d 138, 143 (Tex. App.—Fort Worth 2008, no pet.). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Perry Homes v. Cull*, 258 S.W.3d 580, 602 (Tex. 2008); *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *Perry Homes*, 258 S.W.3d at 602.

An abuse of discretion does not occur when the trial court bases its decision on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002). A trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004); *In re J.P.C.*, 261 S.W.3d 334, 336 (Tex. App.—Fort Worth 2008, no pet.).

To determine whether there has been an abuse of discretion in a family law case, we consider (1) whether the trial court had sufficient evidence upon which to exercise its discretion and (2) whether the trial court erred in applying its discretion. *In re M.C.F.*, 121 S.W.3d 891, 895 (Tex. App.—Fort Worth 2003, no pet.). In appropriate cases, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion. *See Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex.1991); *J.P.C.*, 261 S.W.3d at 336.

## B. Analysis

The pertinent portion of the divorce decree provides each parent the "joint right with the other parent to consent to medical, dental, and surgical treatment involving invasive procedures." Thus, as a prerequisite to receiving reimbursement for dental expenses incurred by or on behalf of the minor children, the divorce decree requires that both parents consent to an invasive procedure.

In its findings of fact, the trial court relies on "uncontroverted testimony" that the application of braces involved "not only actual entry into the oral cavity of the child but the removal of at least one tooth[6] and the orthodontic manipulation and realignment of the remaining teeth."

---

[6] Brennan conceded that (1) the removal of K.B.'s tooth was an invasive procedure, (2) the 2006 tooth removal was done in preparation for braces; and (3) Cedeno should not have to pay "whatever the charge was for having one tooth removed." Brennan also stated he did not believe the cost of the tooth removal was included in the amount of reimbursement he sought from Cedeno for the braces. Because Brennan conceded the tooth removal was an invasive procedure, we do not address this portion of the trial court's finding of fact on appeal.

## 1. Legally Insufficient Evidence Of "Invasive Procedure"

The Texas Family Code does not define "invasive procedure." However, Appellant proposed a definition contained in the Texas Health and Safety Code, which defines "invasive procedure" as a "surgical entry into tissues, cavities, or organs; or repair of major traumatic injuries associated with . . . the manipulation, cutting, or removal of any oral or perioral tissues, including tooth structure, during which bleeding occurs or the potential for bleeding exists." Tex. Health & Safety Code Ann. § 85.202(3) (Vernon 2009). The Texas State Board of Dental Examiners has incorporated the same definition in its Rules and Regulations. Tex. Bd. of Dental Exam'rs Rules and Regulations, Rule 108.23 (2010), http://www.tsbde.state.tx.us/documents/rules/SBDE-Rules-Feb2010.pdf. Cedeno does not argue that Brennan's proposed definition is inapplicable in this case and proposes no alternative definition. Indeed, she contends the trial court did not fail to follow guiding principles because it referenced the legislative definition urged by Brennan in its letter ruling.

Because Cedeno did not object to Brennan's definition—and even contends that using Brennan's own definition, the orthodontic treatment involved here was invasive—we will accept that definition for the purpose of this case. *See Ancira Enter., Inc. v. Fischer*, 178 S.W.3d 82, 93 (Tex. App.—Austin 2005, no pet.) (holding that appellee's definition governed the appellate court's legal sufficiency review because the appellant did not object to its submission). We accordingly consider

7

whether there is legally sufficient evidence of an "invasive procedure" as defined by Brennan.  *See id.*  The legislature's definition of "invasive procedure" is not simply "actual entry into the oral cavity," but a surgical entry.  Additionally, we agree with Brennan's contention that using the trial court's interpretation, even teeth cleaning or flossing by a dental hygienist could be considered an "invasive procedure" because the procedure involves entry into the oral cavity.  Thus, we must hold the evidence is legally insufficient to support the trial court's finding that the braces in this case are an invasive procedure because of "actual entry into the oral cavity."

### 2.  Insufficient Evidence As to Nature of Procedure

Aside from Brennan's testimony that he spoke with Cedeno about the need for the children to have braces and Cedeno's testimony that her orthodontist suggested use of an "expander" for R.B. to cut short a portion of the time needed for braces at her young age, we find no evidence in the record to support the trial court's finding that the application of braces involved "manipulation and realignment of the remaining teeth."  Moreover, there was no testimony concerning the procedure for applying the braces. *Cf., Waltz v. Waltz*, 776 S.W.2d 320, 322 (Tex. App.—Houston [1st Dist.] 1989, no writ) (holding no evidence existed to support the reasonableness of medical bills incurred on behalf of minor children as required by decree).  We hold there was no probative evidence to support the trial court's finding of fact that the braces, in this case, are an invasive procedure.  Although it is uncontroverted that braces were applied in both childrens' mouths, the evidence is insufficient to support

8

an implied finding of fact that the braces in this case did or did not involve a surgical entry into the children's mouths or the "repair of major traumatic injuries."

We sustain Brennan's third and fourth issues and hold that the trial court abused its discretion by finding braces in this case to be an "invasive procedure" and erred in denying Brennan's motion. *See M.C.F.*, 121 S.W.3d at 895. Because we sustain Brennan's third and fourth issues, we need not address his remaining issues. *See* Tex. R. App. P. 47.1.

## IV. CONCLUSION

Having sustained Brennan's third and fourth issues, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.

ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  May 20, 2010